**NATIONAL SURETY CORPORATION, Appellant,**

v.

**James W. DIGGS, Appellee.**

**No. 15554.**

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 22, 1954.

Rehearing Denied Nov. 19, 1954.

Nelson, Montgomery, Robertson & Sellers, and Lee Sellers, Wichita Falls, for appellant.

Mock & Kee, and C. Coit Mock, Wichita Falls, for appellee.

MASSEY, Chief Justice.

Lois R. Weller owned a certain automobile which was covered by a policy of automobile public liability insurance, issued by the National Surety Corporation. On date of May 2, 1953, Mrs. Weller and her automobile were involved in an accident with a vehicle operated by James W. Diggs. The limits of Mrs. Weller's liability insurance policy was $10,000 for each person and $20,000 each accident for personal injuries, and $5,000 for property damage. The policy form was the standard one for companies licensed and doing business in the State of Texas. The National Surety Corporation denied liability to Mrs. Weller and because of a 104 day delay in reporting the accident refused to defend the suit for damages filed against her by James W. Diggs. By a decree which has become final, Diggs recovered judgment in his suit against Mrs. Weller for the sum of $15,800, which was apportioned as follows: $10,000 for his wife's injuries, $5,550 for his own injuries, and $250 for property damage. Subsequently, Mr. Diggs brought suit on the insurance policy directly against the National Surety Corporation. He sought to impose liability directly against it for the damages thereunder provided to be paid in Mrs. Weller's behalf. The Company plead breach of a policy condition requiring prompt notification of accident. By express terms the policy contract provided that the giving of such notification should be a condition precedent to any liability of the Company.

Trial was held and despite the Company's motion for instructed verdict, the trial court submitted to the jury the single issue of whether the notice of the accident given in writing by Lois R. Weller on August 14, 1953, was given as soon as practicable following the occurrence of the accident on May 2, 1953. The jury found that the notice was given as soon as practicable, and despite the Company's motion for judgment non obstante veredicto, judgment was entered on the verdict in favor of the plaintiff Diggs and against the defendant Insurance Company. From this judgment the Company appealed.

Judgment reversed and rendered.

The insurance contract (a "motor vehicle liability policy," as that term is defined by the Texas Motor Vehicle Safety-Responsibility Act, Vernon's Ann.Civ.St. art. 6701h) provided by express written terms that Lois R. Weller, as the "insured", agreed with the National Surety Corporation, as the "Company", upon the consider-

ation of her payment to it of a $30 insurance premium and in reliance upon her statements and declarations, and subject to the limits of liability, exclusions, conditions and other terms of the policy,—that said Company would—by coverages "A" and "B" thereof—"pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile * * *," (and to pay) "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, * * * caused by accident and arising out of the ownership, maintenance or use of the automobile."

Condition No. 1 of the policy contract reads as follows: "Notice of Accident— Coverages A, B and C. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. * * *"

Condition No. 6 of the policy contract reads as follows: "Action Against Company —Coverages A and B. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined * * *."

Mrs. Weller was involved in the accident with Mr. Diggs on May 2, 1953, and 104 days later, on August 14, 1953, gave written notice of the occurrence of the accident to the Company. The Company promptly denied liability to her because of her noncompliance with Condition No. 1. Mrs. Weller defended the suit prosecuted against her by Mr. Diggs, but lost the case. Judgment in Diggs' favor became final against her. It was then that Diggs brought suit on the policy direct against the Company to enforce its payment of his damages.

The Company set up Mrs. Weller's noncompliance with Condition No. 1 of the policy as its sole defense to the suit, insisting that Mrs. Weller's noncompliance was a breach of a condition precedent to any liability on its part to Diggs as well as to Mrs. Weller.

As previously noted, the case was submitted to the jury on the single fact issue inquiring whether the notice given by Mrs. Weller on August 14, 1953, was notice given as soon as practicable after May 2, 1953, and the issue was found against the Company, and judgment based thereon was entered against it.

 Since the evidence indisputably established that the elapsed time was 104 days after the accident before notice thereof was given as provided by the policy, we believe that but for the presence of evidence demonstrating an occasion and excuse for the delay the notice was not given within the requisite time. A Fifth Circuit Court in a Texas case held that the term " 'as soon as practicable' " means "within a reasonable time". Callaway v. Central Surety & Ins. Corporation, 1939, 107 F.2d 761, 762. Authorities from all jurisdictions support this view. See 18 A.L.R.2d 462. "Immediate notice" has the same meaning. Commercial Standard Ins. Co. v. Harper, 1937, 129 Tex. 249, 103 S.W.2d 143, 110 A.L.R. 529. The question is: "Was notice given at such convenient time as under the circumstances would be reasonably requisite to doing the thing required?" See 76 A.L.R. 66; Travelers' Ins. Co. v. Scott, Tex.Civ.App.Fort Worth, 1919, 218 S.W. 53, error refused.

 The general rule, which we believe applicable in Texas, and the application of such rule to any given case, is as stated in 18 A.L.R.2d 467, as follows: "The general rule to the effect that what constitutes a reasonable time within which notice must be given and suit papers be forwarded depends on the individual facts and circumstances of each particular case has been applied in a number of cases to situations in which the insured offered no excuse or extenuating circumstances for the delay. Obviously such failure to ex-

plain the delay will result, in most instances, in a holding that notice had not been given within a reasonable time." See cases annotated in 76 A.L.R., beginning at page 66, in 123 A.L.R., beginning at page 961, and in 18 A.L.R.2d, beginning at page 467. From these cases it will be observed that unexplained delays of 26 days have been held excessive as a matter of law when the fact of the delay is undisputed and that conclusion only is reasonably possible from undisputed facts; and on the other hand unexplained delays of 25 days have been held to have been given within a reasonable time as a matter of law. In a case originating in Texas it was held that 22 days' delay was nevertheless sufficiently timely under an automobile liability policy on the ground that it gave ample time for a full investigation of the case. Callaway v. Central Surety & Ins. Corporation, 5 Cir., 1939, 107 F.2d 761. In an employers' liability case in Texas it was held that a delay of 16 days was timely notice (apparently as a matter of law). United States Fidelity & Guaranty Co. v. Pressler, Tex.Civ.App.Texarkana, 1916, 185 S.W. 326. On the other hand, in the case of an automobile theft policy, delay in reporting the theft for 28 days was held not to have been timely. Commercial Standard Ins. Co. v. Harper, supra. In an automobile liability case a trial court's holding that notice delayed 77 days was not timely given was not challenged on the appeal. Butler v. Employers Casualty Co., Tex.Civ.App.Eastland 1951, 241 S.W. 2d 964, writ ref., n. r. e. Cases from other jurisdictions may be referred to in the cited A.L.R.'s and Blashfield's Cyclopedia of Automobile Law and Practice, Sec. 3731. In the present instance it is our conclusion that as a matter of law the timely notice contracted for by the parties was not given, and that, in the absence of facts and circumstances rationalizing and excusing the delay, the Insurance Company may successfully avoid the contract. For examples of circumstances excusing delay, see cases cited in Vol. 22, Texas Digest, Insurance, ⚖539(6), p. 494.

The only evidence in the record having any relation to any reason why notice of the accident was not given until it was—came from the lips of Mrs. Weller. Nothing·in her testimony raises any question as to whether she was at all times aware that she had in force and effect, as of the time of her accident and applicable thereto, the insurance policy sued upon. Neither is she shown to have been incapacitated or otherwise prevented from complying with the policy provision relating to the giving of notice. The only facts testified to which might be deemed material were those relating to her ignorance of the injuries sustained by the Diggs family and of the damage done to their property as the result of the collision. So the question is: "Does this make a fact issue of whether the notice was given by Mrs. Weller 'as soon as practicable'?"

Mrs. Weller was driving her automobile between the cities of ·Wichita Falls and Burkburnett, Texas, and just as she reached the crest of a hill discovered on the highway immediately ahead of her the pickup truck. The Diggses were in the pickup truck. There is an inference in the testimony that the pickup was at a standstill. Mr. Weller knew she would collide with the pickup before she struck it, and after she regained consciousness (she lost consciousness as the result of the severity of the collision), she was aware that her car had struck it. She was in an injured condition when taken home from the scene of the accident and the officers who took her home did not tell her that there was any person injured in the collision other than herself, and did not tell her that the pickup truck was damaged. They told her that she was not to worry—that everything was okay. It should be noted that the officers did not specifically tell her that no one (other than herself) was injured and did not tell her that there was no damage done to the pickup.

A few days later, during the course of Mrs. Weller's arrangement for repairs of the damage done to her own automobile, she was apprised of the fact that such re-

pairs would cost her approximately $300. She proceeded to have her car repaired, and she engaged in certain other activities, including litigation culminating in the securing of her divorce and a few days later taking a new husband and making a trip of some distance. But no part of her activities included that of making any investigation or inquiry in an endeavor to determine whether any one was injured in the accident, or whether there was any damage done to the pickup. She indicated that it was her opinion and belief up until the time a citation in a suit for damages was served upon her that no injuries or damages had resulted to other persons and property. She was content to cling to that opinion and conclusion, without inquiry, in reliance upon the police officer's statement that "everything was okay" until she was rudely awakened to the true state of affairs by the sheriff with citation. It was on the second day afterward that she gave the Insurance Company written notice of her accident.

█ In such a circumstance there is a requirement of law incumbent upon a holder of a liability insurance policy, the failure of compliance with which will leave him subject to any defense available to the Company under policy provisions providing for its escape from responsibility in instances of delayed notice. That requirement of law is that whenever the occurrence comes within the terms and definitions of the policy contract as an accident (the perils of which are the subject of the contract), the policyholder who fails to give notice of the accident has the full duty of investigating it, and if, in the light of a full investigation, information is not obtained precluding every reasonable hypothesis that there was injury or damage resulting therefrom, the policyholder will not be relieved of compliance with the provisions of the policy relating to prompt notification. In such instance, the policyholder will not be relieved of the obligation to give notice in the absence of the full investigation incumbent upon him, and he will not be relieved because of his making

such an investigation where the information obtained by its making does not preclude every reasonable hypothesis that there was injury or damage resulting therefrom. Texas Glass & Paint Co. v. Fidelity & Deposit Co., Tex.Com.App.1922, 244 S. W. 113. This case established the foregoing as the law applicable to such cases in Texas. In the case of Le Sage v. Utilities Ins. Co., 5 Cir., 1942, 131 F.2d 536, the court seemed to have applied the rule without stating it. For an analysis of the question in all states see cases annotated in 18 A.L.R.2d 474, supplementing 76 A.L.R. 105 and 123 A.L.R. 967. In Texas the question of whether harm or prejudice resulted to the Company because of delay is not to be considered, as it is immaterial. New Amsterdam Casualty Co. v. Hamblen, 1945, 144 Tex. 306, 190 S.W.2d 56.

█ Since Mrs. Weller indisputably knew that she had sustained an accident of the character contemplated by her policy of liability insurance, which accident she did not report to her Insurance Company, she had the full duty of investigating the accident and of ascertaining whether any one had been injured thereby and whether there had been any damage done to any one's property, if she wished to escape her contractual responsibility in the giving of notice. This she did not do. Had she done so she would unquestionably have discovered that Mr. and Mrs. Diggs were injured in the accident and their property damaged. Therefore Mrs. Weller failed to give the contractual notice at her peril. The evidence not only failed to make the question of delay an issue of fact, it established the question as one of law. Of course, both she and Mr. Diggs might have profited had some one given notice to the Company in her behalf, but this was not done. We have already pointed out that the notice was too long delayed as a matter of law and since Mrs. Weller's non-compliance with the contractual provision as to notice, under the circumstances, left her subject to the Company's defenses because of that delay, the Company was at perfect liberty to deny liability as it did.

There is no contention by Mr. Diggs that the provision of the contract by which the Company seeks to escape liability is invalid for any reason or that it should not be given force and effect (at least in so far as its applicability to the insurance over the limits of the Texas Motor Vehicle Safety-Responsibility Act). Instead, he honors the provision and seeks to demonstrate its inapplicability. Since we have held it applicable, Mr. Diggs is in the same position Mrs. Weller would be in had she paid the damages assessed against her and brought suit against the Company. Since the Company can avoid liability to her because of the delayed notice, it can avoid liability to him for the same reasons, since it is necessarily through her and her contract with the Company that he must seek to establish his claim. See Williston on Contracts, Revised Edition, Secs. 394, 395.

Though we have held that the policy contract itself, as written by the Company and Mrs. Weller, is inoperative and avoidable at the Company's option—which option it has exercised—yet we recognize that if the Texas Motor Vehicle Safety-Responsibility Act, Vernon's T.R.C.S. Article 6701h, operates to make her policy of insurance a contract made for the benefit of the public in the first instance when it was made, or for Mr. Diggs, as a member of the public, as of the very time that the accident occurred, or even as of the time his judgment became final as against Mrs. Weller,—then nevertheless the Company is liable to Mr. Diggs despite its clear defense in the absence of statute.

Mr. Diggs insists that this is the situation that confronts us, and contends in any event and to the extent of the applicability of the financial responsibility dealt with by the Act, to wit: $5,000 for each person, $10,000 each accident for personal injuries, and $5,000 for property damage,—that even if the Company is entitled to avoid liability under its policy in the contractual amounts in excess of the foregoing it is still liable to the limits of liability provided for by the Act. In that connection Mr. Diggs quotes from the Act, Article 6701h, Article IV, Sec. 21, sub. (f), reading as follows:

"Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"1. The liability of the insurance company with respect to the *insurance required by this Act* shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance company and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy;

"2. The satisfaction by the insured of a judgment for such injury or damage shall not be a condition precedent to the right or duty of the insurance company to make payment on account of such injury or damage; * * *."

The emphasis upon the words, *"insurance required by this Act"*, is our own. An examination of the Act in its entirety discloses that for the purpose of considering the quoted section the Act may be considered to have two classifications, of which the first relates to persons and circumstances wherein motorists are not required to have any financial responsibility as a prerequisite to the operation of a motor vehicle upon the highways of the state,— and the second relates to persons and circumstances wherein motorists are required to have such responsibility as prerequisite to such operation. Unquestionably such responsibility in the form of insurance policies would have the peculiar propensity and purpose to protect the public as the primary object rather than the protection of the policyholder. See Williston on Contracts, Revised Edition, Sec. 364A. As to the second classification, "motor vehicle

liability insurance", as defined in the Act, is a form of proof of financial responsibility, and where it is the applicable evidence thereof it would be *"insurance required by this Act"*. However, within the second classification,—those who are required to have financial responsibility as a prerequisite to subsequent motor vehicle operation, —come only those persons who have been guilty in the past of some character of penal offense, a part of the punishment for which entailed the Department of Public Safety's suspension or revocation of their licenses to operate motor vehicles. By the provisions of the Act, those persons charged of such an offense and not tried, but who forfeit bail, also come within the second classification.

To only these persons would the quoted provision of the Act apply, and only those insurance contracts issued to them (or already in force and effect) under the provisions of the Act would be absolute and not subject to contractual conditions precedent to liability. Under the provisions of Article IV, Sec. 19, of the Act, such policies become absolute upon the filing with the Department of Public Safety the written certificate of an insurance company to the effect that its policy contract is in effect, operative to insure a person who comes within the second classification and is required to furnish proof of financial responsibility as a prerequisite to restoration of his license to operate a motor vehicle. It is plain that by the provisions of law any insurance company issuing such a policy is placed on notice that in the event its policyholder should have an accident the company's contractual liability becomes absolute as of that time and is not subject to avoidance because of any violation by its policyholder of conditions recited in the contract to be conditions precedent to company liability.

Mrs. Weller does not come within the second classification. Neither does the policy contract under consideration in this case come within the character of policies which would be issued to policyholders in the second classification. Mrs. Weller comes within the first classification because she was not obliged, under the law, to have any "motor vehicle liability insurance" or other form of financial responsibility as a prerequisite to her operation of the automobile driven by her at the very time of her accident with Mr. Diggs. Automobile operators coming within the first classification have, by reason of the Act, only one added occasion and reason to purchase liability insurance, that being to more conveniently and certainly furnish proof to the Department of Public Safety that they are financially responsible for damages they may ultimately be required to pay because of an accident should such proof be necessary. By the Act's provisions, a person in the first classification may, following an accident, be compelled to surrender his license if he cannot present satisfactory security or evidence of security and financial responsibility, as by an insurance policy which at the very time of the accident was in force and effect. So a great number of persons purchase "motor vehicle liability insurance" in order that they might continue to drive and operate their automobiles after an accident, should one occur. Many such policies now in effect would not have been purchased except for the purchasers' contingent possibility of loss of their automobile operator's licenses, etc. Of course, we do not know, nor do we need to know, whether this was Mrs. Weller's reason for initially purchasing the policy of insurance here in question. It is sufficient to recognize that since she was not compelled to purchase it, and since the matter of its purchase was optional with her at the time, its own terms and covenants and conditions control, for there was no third party privy to it at the time of its purchase or at the subsequent time when she was involved in the accident, and it was not issued primarily for the protection of the public.

Therefore, the Texas Motor Vehicle Safety-Responsibility Act having no application to or effect upon the policy contract issued by the Company to Mrs. Weller, Mr. Diggs reaps no benefit therefrom. And so, as a stranger to the policy con-

tract, Mr. Diggs is given no right inhibited by it to Mrs. Weller, with whom the Company contracted. Appleman's Insurance Law and Practice, Sec. 4865; Ray v. Moxon, Tex.Civ.App., Amarillo 1933, 56 S.W.2d 469, affirmed at 125 Tex. 24, 81 S.W.2d 488. See Williston on Contracts, Revised Edition, Sec. 364A; 86 C.J.S., Torts, § 9, sub. b, page 929; 72 C.J.S., Privity; Privies; Privy, page 955; 17 C.J.S., Contracts, § 519, sub. bb, page 1137, and § 529, page 1152.

By another counterpoint Mr. Diggs contends that because the Company (as defendant in the trial court) did not verify its answer it must be held to have waived as a defense the failure on the part of Mrs. Weller to give the notice prescribed by the policy contract. Mr. Diggs contends his position is sound because of the provision of Rule 93, Texas Rules of Civil Procedure, providing: "A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit. * * * (m) That notice and proof of loss or claim for damage has not been given, as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity."

The idea behind the quoted section (m) of Rule 93, T.R.C.P., is exactly that accounting for the provision of Article 5546, T.R.C.S., providing, in effect, that an insurance company cannot prescribe a period of less than 90 days within which notice is to be given for a claim for damages under an insurance policy. The provisions of Article 5546 have been held to have no application to provisions of an automobile theft policy relating to requirement of notice that an automobile had been stolen. Lone Star Finance Company v. Universal Automobile Ins. Co., Tex.Civ.App. Galveston 1930, 28 S.W.2d 573. Because it deemed the decision of the Galveston court correct in the cited opinion, the Commission of Appeals, Section B, reversed and rendered a contrary holding. Commercial Standard Ins. Co. v. Harper, supra. For the same reasons that "notice of theft" was held not to be the same as "notice of claims for damages" under the provisions of Article 5546, "notice of accident" required by the provisions of the policy contract here in question is not the same as "notice and proof of loss or claim for damage" under the provisions of Rule 93, section (m), T.R.C.P. Furthermore, section (m) of the Rule is designed to operate when an insured is forced to sue the company to recover in his own behalf under a policy providing for benefits payable directly to him (or another beneficiary) because of a loss sustained, as, for example: theft insurance, collision insurance, etc., as applied to the forms of automobile coverages,—and where such an insured (or beneficiary) alleges in his pleadings that he gave "notice and proof of loss or claim for damage". If the defendant insurance company in such a suit desires to deny such allegation, it is required to do so under oath and specifically and with particularity. The Rule, and section (m) thereof, has no application to automobile liability insurance contracts. Therefore, we find no merit in the counterpoint.

Judgment is reversed and rendered that appellee James W. Diggs take nothing by his suit against the appellant National Surety Corporation.