The **YORKSHIRE INDEMNITY COMPA-NY OF NEW YORK** (also known as The Yorkshire Insurance Company of New York), Appellant,

v.

**ROOSTH & GENECOV PRODUCTION COMPANY**, Appellee.

No. 16427.

United States Court of Appeals
Fifth Circuit.

Feb. 28, 1958.

Rehearing Denied April 3, 1958.

652

Hobert Price and Henry W. Strasburger, Dallas, Tex., for appellant.

Chas. F. Potter and Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, Tex., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

On May 31, 1948, an oil derrick crashed in on Loren Lee White crippling him for life. Now a decade later, the litigation which saw, in the main case,[1] three state court jury trials, two sets of appeals, one successfully through the Supreme Court of Texas, the second ending in the Court of Civil Appeals, the trial below and its later appeal here of the present case seeking indemnity by the Operator from its general liability insurer, must continue on its wearisome way. For we hold that for reasons discussed, the case must be remanded for a new trial.

This aftermath growing out of Roosth & Genecov's efforts to recover the policy limits of $25,000 under the general liability policy for the $50,000 paid by it to White, presents for our consideration (1) the substantive question whether in the circumstances of this case, notice of the accident twenty-four months later was "as soon as practicable,"[2] and (2) procedural questions on admission and exclusion of evidence.

The accident giving rise to the tort suit, note 1, supra, occurred May 31, 1948. White, a member of the drilling crew, was in the employ of Carter-Jones Drilling Company then engaged as an independent drilling contractor in the drilling of well No. 17 for Roosth & Genecov. In the accident the derrick which belonged to Roosth & Genecov collapsed and White was severely injured. For many years it had been used on another lease as a pumping, not a drilling, derrick. Roosth & Genecov, either through agents or contractors, dismantled it at the old well site, transported it to, and then re-erected it at, the site of Well 17. The well was spudded in on a hillside of substantial slope. Preparatory to erecting the derrick, a considerable cut was made by bulldozer and a level surface provided by blading loose sand fill, but without going down to hard dirt. In re-erecting the derrick, the four original concrete foundation blocks were reused by being set on the bulldozed site. The *cause celebre* of the endless litigation was southeast foundation block which, admittedly, instead of being approximately 4 x 4 x 1 foot, had a thickness varying from one foot to six inches with two or more bumps, or uneven places, on the bottom.

White was hospitalized for nearly a year. The contractor was subject to the Texas Workmen's Compensation Act and its Compensation Insurer paid out an aggregate of approximately $14,000 as total permanent disability benefits, including medical hospital costs in the neighborhood of $4,000.

Roosth & Genecov knew of the accident almost immediately. Within a short time Isadore Roosth, a substantial stockholder and an executive officer of the Company, was at the scene to ascertain what had happened and, with the Contractor, to decide what had to be done to restore drilling operations. This was

1. It was styled White v. Roosth & Genecov Production Company. On the first appeal, the original verdict of $30,000 was affirmed by the Court of Civil Appeals, Roosth & Genecov Production Co. v. White, 257 S.W.2d 140, but was reversed by the Supreme Court, 152 Tex. 619, 262 S.W.2d 99. On the last trial, the verdict was $50,000 which was affirmed, Tex.Civ.App., 281 S.W.2d 333.

2. Condition No. 9 of the General Liability Policy issued by The Yorkshire Indemnity Company of New York to Roosth & Genecov Production Company states:

"9. Notice of Accident. Upon the occurrence of an accident written notice shall be given by or on behalf of the Insured to the Company or any of its Authorized Representatives as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

the sole investigation made. The sufficiency of this investigation and the validity of the conclusions drawn from it were and are the crucial points in this case. For it is undisputed that despite the spectacular proof of a derrick lying collapsed as a mass of twisted wreckage, a worker obviously injured severely, and an obvious failure (from whatever cause) of property belonging to Roosth & Genecov and for which it was responsible as the "premises" furnished to the Contractor and Contractor's employees, this spectacular accident was not reported to the Insurer. Indeed, it was not reported until about June 1, 1950, on which day citation was served on the Assured as a defendant in the tort suit instituted by White on May 20, 1950, just on the eve of the Texas two-year limitation period. Vernon's Ann.Civ.St. art. 5526. Because of this failure to report, the Insurer declined liability under the policy, but subsequently undertook the defense under a typical non-waiver agreement.

■ Since management of the Assured knew of the occurrence and there were no physical obstacles or other circumstances which interfered with the communication of that knowledge to the Insurer, this was not, in fact, notice "as soon as practicable." Such provisions, note 2, supra, for notice are valid in Tex-as. The Assured now recognizes that when in 1948 it chose not to make the report, in order then to avoid the breach of the policy, it must show that, first, it made a full, complete and fair investigation of all of the facts and surrounding circumstances, and then, on the basis of that investigation reasonably concluded[3] that " * * * the occurrence was of such a nature as that it could not reasonably be expected to result in any claim or liability * * *," Texas Glass & Paint Co. v. Fidelity & Deposit Co. of Maryland, 244 S.W. 113, 115 (Tex.Com.App. opinion adopted).

■ The Assured also recognizes that with no effort ever having been made to contact either White or the Contractor's Compensation Insurer, the investigation was, as we held in Dunn, note 3, supra, incomplete and inadequate, and to overcome this, it would have to establish that had inquiry been made of them, each would have stated that no claim would be asserted against Roosth & Genecov.

This meant, of course, that the Assured had to establish that through the rosy-hued lenses of May 1948, it did not reasonably see that which the 1955 bifocals, prescribed by a succession of juries, made so plain: (1) there was liability in fact against Roosth & Genecov; (2) White and the Compensation Insurer not

---

3. The Texas Glass & Paint case has recently been expressly approved by the Texas Supreme Court, New Amsterdam Casualty Co. v. Hamblen, 1945, 144 Tex. 306, 190 S.W.2d 56, 58; and even later, Klein v. Century Lloyds, 1955, 154 Tex. 160, 275 S.W.2d 95, by citing New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56. We have applied this law, Dunn v. Travelers Indemnity Co., 5 Cir., 123 F.2d 710. Highway Insurance Underwriters v. Griffith, Tex. Civ.App., 290 S.W.2d 950 (error ref. n.r.e.), is not to the contrary.

See also National Surety Corp. v. Diggs, Tex.Civ.App., 272 S.W.2d 604, 609 (error ref. n.r.e.), which graphically describes the heavy burden of the non-reporting assured:

"That requirement of law is that whenever the occurrence comes within the terms and definitions of the policy contract as an accident (the perils of which are the subject of the contract), the policyholder who fails to give notice of the accident has the full duty of investigating it, and if, in the light of a full investigation, information is not obtained precluding every reasonable hypothesis that there was injury or damage resulting therefrom, the policyholder will not be relieved of compliance with the provisions of the policy relating to prompt notification. In such instance, the policyholder will not be relieved of the obligation to give notice in the absence of the full investigation incumbent upon him, and he will not be relieved because of his making such an investigation where the information obtained by its making does not preclude every reasonable hypothesis that there was injury or damage resulting therefrom. Texas Glass & Paint Co. v. Fidelity & Deposit Co., Tex.Com.App., 1922, 244 S.W. 113. * * *"

only intended to assert a claim—they asserted one—and got satisfaction.

To establish what the Assured had been held liable for, the Insurer, after adverse rulings, made proffer of the jury's special issue verdict and the portion of the opinion of the Court of Civil Appeals summarizing[4] these findings of negligence. In view of our disposition of the case, we need not pass on the correctness of these rulings. Even though these proffers were excluded below, the jury, from extended examination and cross examination of the witnesses, readily understood that in the tort suit it had been contended that Roosth & Genecov were negligent in using a faulty foundation block, in erecting the derrick on an improper fill of loose sand, and in furnishing a defective, rusty derrick.

The Assured sought to establish the sufficiency of the investigation through Isadore Roosth, the one who made it. The investigation was superficial indeed. He could recall the name of only one person, his own lease pumper, who had been an actual eyewitness. He talked to the Contractor's toolpusher, whose name he knew, who likewise arrived after the accident. He talked to several unidentified workers at the site, but he was unable to state whether any had been actual eyewitnesses or were merely members of the next tour (shift) repeating what had been told to them. From these he was told that this is what happened: they were coming out of the hole with drill pipe; with over 3,000 feet of it suspended, the clutch slipped causing the pipe to drop suddenly; the driller put the brakes on quickly, instead of gradually, thus throwing the full weight of the falling pipe on the derrick; the derrick collapsed from this undue strain. He made no minute examination of the derrick since it was a mass of twisted wreckage. Neither then nor the next day when the wreckage was dragged a short distance away exposing at least the southeast foundation block, did he examine this block or the fill. He never sought to interview White, but at least once he discussed the occurrence briefly with the Contractor's representative who told him "The man was being taken care of by their insurance company and there wasn't anything for me to worry about that. * * * [T]hey told me that the man was being taken care of by their coverage, by their insurance coverage * * * [workmen's compensation] * * *."[5]

Of course he never called in any experts to obtain an opinion as to the real cause of the derrick collapse, and had he made inquiry from any of the men at the well as to the foundation blocks, he could have received no information since the foundations were in place on the ground and had been prior to the time the drilling Contractor commenced operations. He categorically acknowledged that if a Contractor's employee is injured, the Compensation Insurer can assert a claim against his company, and that in his experience in the East Texas oil field, a serious injury is likely to result in lawsuits.[6]

4. Roosth & Genecov Production Co. v. White, Tex.Civ.App., 281 S.W.2d 333, at page 335:

"On the issues of negligence and proximate cause, the jury found that defendant furnished a southeast corner foundation block of irregular dimensions and thickness; defendant had knowledge of this condition; the furnishing of such block was negligence and was a proximate cause of the plaintiff's injuries; that defendant caused the southeast corner foundation block of the derrick to be placed on a soft, sandy fill; that defendant had knowledge that the block was so placed; that such action was negligence and a proximate cause of plaintiff's injuries * * *."

5. So far as these inquiries made to White's employer, Contractor, were concerned, this assurance was inconsequential. The Texas Workmen's Compensation Act, Arts. 8306–8309, Tex.Rev.Civ. Stat., imposes a direct obligation on the compensation carrier, not the employer, and it is the compensation carrier and the injured employee who alone have the right to recover damages from third parties, Art. 8307. The employer has neither rights nor control.

6. "Q. * * * I am talking about your experience as an experienced oil field

What little strength this had as a prudent investigation, it had none at all on whether, had White or the Compensation Carrier been contacted, each would have disavowed a purpose to assert a claim. It was at this stage that all became topsy-turvy. Old allies were now in the position of hostile antagonists. And old and fearsome adversaries became welcome confederates for, to establish this, he who had recently been the lion in the street now became the star witness. White's successful trial counsel as a witness for the Assured testified along these lines: he was initially retained by White more than a year after the accident; his employment concerned recovery of maximum workmen's compensation benefits; he did not have in mind any common law third party damage suits. In the negotiations with the Compensation Insurer terminating successfully sometime in the spring of 1950 in a total permanent settlement, the claims adjuster expressed the opinion that neither White nor the Compensation Insurer, as subrogee, had any common law third party claim. As White's attorney he actually thought little of the third party case and had made no investigation to determine

whether one existed. The thing which set him off was the spectacular recovery obtained shortly before by one of his law school classmates in the Allbritton case.[7] Stimulated by this famed case and discussions with counsel on both sides of it, he began some investigation. As he thought the claim might soon be time-barred under the Texas two-year statute of limitations, he filed suit May 20, 1950, and then used pre-trial discovery depositions to ferret out the facts on these principal points of negligence. Of course, all of the liability facts proved by him in the tort case were in existence and ascertainable at the time of the investigation by Isadore Roosth.

The upshot of his testimony was that had Roosth & Genecov made inquiry of him at any time more than a couple of months or so prior to May 20, 1950, he would have said that White had no third party claim and would assert none.

In addition, since the Assured had not interviewed White, in order to meet the Dunn case, supra, it undertook to prove what he would have said had there been such an interview. This was done by offering the ex parte statement[8] of Octo-

---

contractor in this field, hasn't it been your experience that any time a man gets seriously hurt on any contractors job even if he is covered with compensation advantages, serious danger of that company being sued? Isn't that true? A. Your statement is true, yes, sir.

 *  *  *  *  *

"Q. That any time anybody is this field is having a well drilled and while that well is going down, somebody gets seriously hurt and the person who is having the well drilled has a strong chance of being sued?

 *  *  *  *  *

"Q. That is true, isn't it, sir? A. There is a likelihood, yes."

7. Tried in the Southern District of Texas, the opinion on post-trial motions dated December 16, 1949, is reported Allbritton v. Sunray Oil Corp., D.C., 88 F.Supp. 54. It involved an injury to a contractor's employee from a derrick collapse, but as this and our opinions, Sunray Oil Corp. v. Albritton, 5 Cir., 187 F.2d 475; 5 Cir., 188 F.2d 751, certiorari denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626, show it made no new Texas law on the

obligation of an "owner" of premises to employees of contractors. The thing which electrified everyone's attention, and occupied ours *en banc*, was the $125,000 verdict which, at that time, held the Texas record.

8. He described the accident:
"* * * The accident happened in Rusk County, Texas and happened as follows: At the time of the accident two full crews were on the job and we were through drilling the well and were coming out laying down drill pipe. I was working on the cat walk using the buggy to lay out the drill pipe. I was facing and watching the driller when the clutch slipped out, this caused the pipe to start falling back in the hole. In other words, the driller had no control over the drawer works other than the use of the brake. I saw the driller put on the brake and saw the derrick start falling back over the draw works and at the same time I started running in the opposite direction but before I was able to get out of the way I was hit by the falling derrick. I might add that the derrick twisted from the time I first saw

ber 14, 1958, apparently made by White to a claims adjuster for Contractor's workmen's compensation insurance carrier.

■■ While the statement was admissible to prove what White would likely have told Roosth had he pursued his investigation further, we think it important to point out that it is not proof of the fact that White either then or later would not assert a claim against Roosth & Genecov. It was a mere description of the immediate cause of the accident by the victim, whose disability up to that time and for months thereafter had kept him away from the scene, made in a statement given for an entirely different purpose unrelated to a potential third party claim. It cannot amount to a declaration of an intention not to pursue a claim against one where, assuming that the declarer is bound by his description of the mechanism of the accident set forth by him in the statement, an act or acts of some other party amounted in law to the legal "cause" of the injury.

■ With the glaring inadequacy of the investigation from failure to contact White and the Compensation Insurer and its significance under the Dunn case, supra, all seem to have been preoccupied with the notion that the Assured need conclude only that there is no reasonable probability of a *claim* being asserted. We think that reads the Texas law too narrowly. The Texas Supreme Court, note 3, supra, as do the parties here, all

view Texas Glass & Paint Co. v. Fidelity & Deposit Co. of Maryland, supra, as the controlling precedent. Three times it speaks in terms of the likelihood of a claim *or liability*.[9] The words "or liability" are of extreme importance as this case illustrates.

■ Short of a binding release from, or unequivocal conduct giving rise to estoppel against a potential claimant, the mere declaration by the claimant of an intention not to press the claim is ineffectual. His purpose does not become complete until the time for suit has passed. If the claimant may, as did both White and the Compensation Insurer, with no real change in any underlying facts subsequent to the time of the accident, not only "revive" but energetically translate what White's attorney implied was not only a sleeping but a dead dog into a very healthy lawsuit of high recoveries, it is evident that to protect the Insurer's rightful interest, the Assured's investigation must comprehend the likelihood both of claims and *liability*. If a claim will be made or, whether made or not, if there is a reasonable probability of liability, then the notice must be given.

■ We echo what the Texas Courts have so often said. Prompt notice of an accident is a reasonable requirement. Insurance companies under the pressure both of traditional schemes of statutory penalties and the general adverse psychological climate in litigation are ex-

---

it falling and fell in my direction instead of the opposite direction. * * * The accident in my opinion was caused by the weight being put on the derrick by the driller applying the brake in order to stop the pipe from falling back to the bottom of the hole. At the time of the accident he had layed down ten or eleven joints and the driller had started back up and out of the hole with more pipe when the clutch jumped out. I do want to add that this derrick was without guy wires, but did not cause the accident."

9. 244 S.W. 113, at page 114: " * * * and similarly it would seem unreasonable to require report of such occurrences as would appear to have no reasonable relation to the subject-matter of

the policy, or not at all likely to result in any claim *or liability*."

At page 114: "The second proposition has been applied to those occurrences which at the time seem in their consequences to be so slight as to preclude a reasonable probability that they will result in claim *or liability*."

At page 115: "It would seem to be a fair deduction from these holdings that, when the insured has complied with its full duty to acquaint itself with all the facts surrounding an accident, and it appears from such investigation that the occurrence was of such a nature as that it would not reasonably be expected to result in any claim *or liability*, there is no duty to report it." Emphasis supplied.

pected to perform fully and quickly. To enable them to fill the law's demands, they must have notice of occurrences likely to give rise to claims under the policy. Prompt and thorough investigation by competent, trained persons is essential. The longer it is postponed the greater the likelihood of the loss of valuable information or available evidence. And since a liability policy, as does this one, provides *defense* as well as indemnity, which in turn requires the exercise of due care or good faith in the settlement [10] of claims within the monetary policy limits, the Insurer, for the protection of itself against future "excess" claims and for the protection of the Assured against risks inherent in the necessity of obtaining full protection through any such uncertain claims, is entitled to the earliest practicable knowledge of the case.

■ If a full, adequate and fair investigation would indicate a reasonable likelihood of legal liability, the Assured who fails to report it on the mistaken, even though reasonable, belief, that the claimant will not assert a claim, must bear the consequences. To escape them, he must establish the contrary.

Of course these things are said in a case which presents a spectacular accident of obviously serious consequences occasioned by the breakdown of the Assured's equipment or appliances with immediate severe damage to the prospective claimant. We are not dealing with the supposititous case of a trivial incident either in occurrence, injury, or in legal theory of liability.

■ On this analysis, we are of the clear opinion that the Assured did not comply with the policy requirements, and that the evidence was wholly inadequate to support a verdict for the Assured. The tort case was in fact, and finally, one of liability. Nothing about the investigation made by the Assured indicates even a remote consideration of this factor of a dual test. Reasonable men under these circumstances could not, with this superficial inquiry, have decided that either Roosth or the Assured had any basis for concluding that it was not a case of potential liability. We hold that the Court erred in not granting the Insurer's motion, adequately made under Fed.Rules Civ.Proc. rule 50(a), 28 U.S.C.A., for a directed verdict.

■ Ordinarily this would mean that we would reverse and here render judgment for the Insurer. But this we cannot do simply because the Insurer omitted a motion and notice for judgment *n.o.v.* under F.R.C.P. 50(b). As futile and utterly useless as such a paper would have been in this endless litigation, it is nonetheless required,[11] and we are powerless either to remit or mitigate.

As an epitaph to this hoary case, we can only say as did the Third Circuit in Garman v. Metropolitan Life Ins. Co., 175 F.2d 24, 28:

"We conclude that the trial judge should have directed a verdict for the defendant. This conclusion makes it unnecessary for us to consider the defendant's other contentions. If the defendant after judgment had moved for judgment in its favor in accordance with its motion for a directed verdict we could remand the case with directions to enter judgment for the defendant.

---

10. See for example Stowers Furniture Co. v. American Indemnity Co., 15 S.W.2d 544 (Tex.Com.App. holding approved); American Fidelity & Casualty Co. v. Greyhound Corp., 5 Cir., 232 F.2d 89; Linkenhoger v. American Fidelity & Casualty Co., 152 Tex. 534, 260 S.W.2d 884; United Services Automobile Ass'n v. Russom, 5 Cir., 241 F.2d 296, 301, note 10.

11. Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177; Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; cf. Johnson v. New York, New Haven & H. R. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77; Moore's Federal Practice, § 50.07, p. 2325, 2326; Kirby Lumber Corp. v. Laird, 5 Cir., 231 F.2d 812, 816; Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879.

Such a motion not having been made, however, the case must be remanded for what under the circumstances would appear to be the useless formality of another trial."

Reversed and remanded for new trial.