**BOSTON INSURANCE COMPANY**
v.
**MALONE AND HOGAN HOSPITAL FOUNDATION et al.**
**Civ. A. No. 1–199.**

United States District Court
N. D. Texas,
Abilene Division.

Sept. 30, 1966.

------◆------

Charles Tighe, Midland, Tex., for plaintiff.

George Leonard, Jr., Sweetwater, Tex., and R. H. Weaver, Big Spring, Tex., for defendant, Malone and Hogan Hospital Foundation.

Bob Hoblit, Odessa, Tex., for defendant, Forrest C. Gambill.

## OPINION

BREWSTER, District Judge.

This case is now before the Court on the motion of the defendant hospital for judgment on the jury verdict and the plaintiff's motion for judgment non obstante veredicto. The Court is of the opinion that the plaintiff's motion is well taken.

The plaintiff brought this suit seeking a judgment declaring that it could not possibly be responsible or obligated to the hospital, as insured, or to Forrest Gambill, as the injured claimant, under a public liability policy it had issued to the hospital.

Forrest Gambill sustained serious burns to his feet on or about December 23, 1961, while he was a patient in the defendant hospital in Big Spring, Texas. The hospital authorities and nurses knew that he should not have any form of artificial heat applied to his extremities, except under positive directions of his physician and then only for a short period of time, on account of the fact that he was a diabetic. On the evening in question, he complained that his feet were cold and asked for an electric heat pad. There were no instructions from his doctor to allow him artificial heat, and the regular nurses denied his request. While a young girl studying to be a licensed vocational nurse was preparing his bed for the night, he prevailed upon her to get him a heat pad. He knew he should not have it, but she did not. He went to sleep with the pad on his feet, and they were severely burned the next morning. His diabetic condition prevented healing, and several months later he suffered an amputation of his right leg above the knee allegedly as a result of the burns.

The manager of the hospital knew of the incident before noon on the morning after the heat pad was provided for Gambill. He also knew that the employee of the hospital was in the wrong in giving the pad to the patient without specific authority from his doctor. The manager talked to Gambill's physician and to the hospital employees who had waited on Gambill and might have knowledge of any of the circumstances leading up to or connected with the occurrence. However, he never talked to Gambill or his wife, then or later. On the basis of the information he received, he concluded that Gambill's own negligence so clearly contributed to his injuries that there could not possibly be any liability, and that Gambill would make no claim against the hospital.

Gambill left the hospital after ten days or so. He was back in the hospital for a short time a little over two months later. There was nothing to indicate that he had any intention of making a claim for his injuries due to his burns. Later on in 1962, the condition resulting from his burns became progressively worse and

he had the amputation in a hospital in Houston.

In April of 1962, the manager of the hospital was informed that Mrs. Gambill had stated to some of the students at the public school where she was teaching in Big Spring, that her husband was going to sue the hospital for damages for his personal injuries resulting from the burns. He dismissed that information as a groundless rumor after he had discussed it with Rev. O'Brien, Mrs. Gambill's father, who was one of the trustees of the hospital. Rev. O'Brien had not talked to the Gambills about the matter; but he expressed surprise and said he could not believe Gambill would bring suit against the hospital.

On September 3, 1963, Gambill filed an action in the state court in Howard County, Texas, asking for $350,000.00 damages from the hospital on account of the burns and the resulting condition.

On September 6, 1963, over twenty months after Gambill sustained his burns, the hospital gave notice for the first time to the plaintiff insurance company of the occurrence that gave rise to the suit. That was in spite of the fact that the public liability policy in effect in December, 1961, required the insured to give notice of an accident covered thereby "as soon as practicable" after it occurred. The hospital administrator admitted that he was familiar with the notice requirement, and knew that he could have satisfied it in a matter of a few minutes by calling the local agent of the insurance company over the telephone.

The jury returned its verdict in the form of answers to two interrogatories finding, (1) that the administrator of the hospital made a full, complete and fair investigation of all the facts and circumstances of the occurrence when Gambill received burns to his feet on or about December 23, 1961, and (2) that, on the basis of such investigation, the administrator reasonably concluded that the incident was of such nature that it would not reasonably be expected to result in any claim or liability.

The plaintiff had moved for an instructed verdict at the conclusion of the evidence. While the Court was of the opinion that the plaintiff was entitled to a judgment as a matter of law, it followed the recommended practice of submitting the possible fact issues to the jury, so that no remand for a new trial would be necessary in the event the appellant court disagreed.

The Court feels that the findings of the jury are not supported by the evidence. There is justification for that view solely on the basis of the facts as they existed in December, 1961. However, if there can be any question about that, it is overcome by the additional information received by the hospital administrator in April, 1962, that Mrs. Gambill had made the statement that her husband was going to file suit. This is not a case where the injury was so slight as to preclude a reasonable probability that the burns would result in a claim or liability. Gambill's diabetic condition was well known to the hospital officials, and they knew that burns to his extremities could result in serious consequences. The administrator acted on the basis of his opinion that Gambill was guilty of contributory negligence beyond question, and would therefore not file a claim or be able to establish liability if he did. That was a conclusion involving fact decisions, both of negligence and of proximate cause, and also questions of law. A public liability insurance carrier could hardly exist on reasonable premiums if its opportunity to investigate and settle possible claims in their early stages were dependent upon the biased judgment of their insureds on questions of that nature.

The advantages of prompt investigation and handling of claims is well known to all who have had experience with personal injury cases. Frequently, statements can be obtained from the injured parties. The witnesses can be interviewed and their knowledge of the facts recorded while their recollection of the details is still fresh. Settlements can be made, even where there is no apparent

**22**

liability, for the purpose of foreclosing the possibility of future claims. Those advantages are defeated by long delays in giving notice to the insurance company of happenings that may possibly result in claims and litigation.

The Court is of the opinion that it is required to enter judgment as prayed for by the plaintiff under the rule established by the following cases: Texas Glass & Paint Co. v. Fidelity & Deposit Co., Tex.Comm.App., 244 S.W. 113 (1922); Dunn v. Travellers Indemnity Co., 5 Cir., 123 F.2d 710 (1941); Yorkshire Indemnity Co. v. Roosth & Genecov, 5 Cir., 252 F.2d 650 (1958).