George **NORMAN** et al., Appellants,

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellee.**

No. 6967.

Court of Civil Appeals of Texas.

Beaumont.

June 13, 1968.

Rehearings Denied Sept. 11, 1968.

Jack Moore, Beaumont, Joe H. Tonahill, Jasper, for George Norman.

Adams & Browne and Richard N. Evans, Beaumont, for Wildwood Assn.

Keith, Mehaffey & Weber, Strong, Pipkin, Nelson & Parker, Beaumont, for appellee.

STEPHENSON, Justice.

This is an appeal from an order granting a motion for summary judgment. A suit for damages for personal injuries had been filed in Hardin County, Texas, styled Norman Franklin vs. George Norman, et al. St. Paul Fire & Marine Insurance Company refused to defend that suit, and brought this action in Jefferson County, Texas, for a declaratory judgment that it was not obligated to defend because of the failure to give it notice. Its motion for summary judgment on such ground was granted. The parties to this suit will be referred to as follows: St. Paul Fire & Marine Insurance Company as "St. Paul;" George Norman as "Norman;" Norman Franklin as "Franklin;" and Wildwood Association, a partnership composed of George Norman, Vernon Hicks, Charles Kelly, Guy Dalrymple and Gus Becker as "Wildwood Association."

St. Paul alleged in its motion for summary judgment: That it had written for Norman, as the insured, a comprehensive general liability policy, dated January 25, 1964, under the terms of which it agreed to pay all sums which the insured should be obligated to pay as damages because of bodily injuries, sickness or disease sustained by any person. That such policy of insurance contained a provision for notice as follows:

NOTICE OF ACCIDENT: When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured, and of available witnesses.

That Norman had been engaged in constructing a dam at Wildwood Resort City. That Franklin, an employee of Hardin Supply Company, while delivering and unloading a truck load of concrete to such premises, received bodily injuries requiring hospitalization and medical attention. That at the time of the accident, April 23, 1964, Norman was 200–300 feet from the scene of the accident, and learned of it immediately. That Norman carried Franklin to the Hardin County Hospital in Kountze for medical attention and treatment. That on or after August 19, 1964, St. Paul received notice of

the accident of April 24, 1964, suffered by Franklin on the premises owned by Wildwood Association. That Franklin's compensation claim as an employee of Hardin Supply Company was settled by agreed judgment September 16, 1964. That the third party action against Norman and others was filed November 3, 1965.

The order granting the motion for summary judgment shows the trial court considered the pleadings, affidavits and depositions of Norman, Franklin, Fred Cooper, J. R. Harris and Milton Cooper.

Norman and Wildwood Association filed separate briefs but their four points of error are identical. These points of error are that the trial court erred in holding there was no genuine issue of fact as to: Whether notice was given St. Paul "as soon as practicable." Whether St. Paul was given notice as would have been given by a reasonably prudent person in the exercise of ordinary care, under the same or similar circumstances. Whether an ordinary prudent person in the exercise of ordinary care would have concluded that a claim would probably be filed against him under the same or similar circumstances. And, in holding that there was no genuine fact issue in the record to prevent granting the motion for summary judgment.

Norman's deposition showed: That he was acting as an independent contractor to make certain improvements at Wildwood Resort City, which included building dams. Concrete was being poured on the date of the accident in question and Norman was standing between 200 and 300 feet from where the accident occurred. He was standing at a place on the dam so he could oversee the work. He did not actually see the accident, but saw the commotion and went down to see about it immediately. He put Franklin in his car and took him to town to see the doctor. Franklin was conscious and did some talking on the way. Norman gave these answers to questions:

A. I didn't question him much about the accident, Joe. Of course, at the time the accident happened I didn't have time to stop and question everybody about how this happened, and so forth and so on, but going into town he told me that the truck rolled back on him and, of course, I asked him how he was feeling and he was pretty badly hurt and he was bleeding at the mouth and he had a handkerchief up over it and I couldn't see how bad it was.

A. And he did make the statement going in that he told them that the brakes on the truck needed fixing. Now, who them is he didn't say.

Q. Did he say anything about how the brakes could have figured into the injury?

A. That's all the comment he made on it.

He never had any other conversation with Franklin. He later received two accounts from the other men as to how the accident occurred. The following answer and question and answer were given:

A. Like I say I did see the man get out of the truck and prepare to unload his load of concrete into the concrete bucket and when he pulled this lever it always throws a tremendous load when you have got five yards of concrete going one way and then you have to reverse it to go the other way it puts a tremendous stress on your truck and when it did the truck started to moving. Now, the men tell me that he ran back up, the door of his truck was open, that he ran back up to try to push on his foot brake as the truck came down and as the truck came down the door hit him, that pushed him backwards and in the meantime the truck had hit the thing down there that you put it in, the concrete bucket, and, of course, it is just suspended on about a forty foot steel cable but when it hit it it rolled around the truck and got him in between the truck and the bucket. They say, one of the men told me it looked like he was trying to push the thing off of him. Of

course, he couldn't push it off, those things weight two thousand pounds I guess. But now that's the story that the men out there had given me. And when I saw them running around there to him I presumed it knocked him down. He was not on the ground when I got up there and I saw the commotion of the men running up there to him.

Q. Did any one of them tell you that he was standing there at the rear of the truck, at the left side of the truck at the rear when the truck started to roll he shoved Clarence Barnes out of the way and this Cooper boy hollered at him and that is when he got hit by the bucket? Did any of them tell you that?

A. Yeah. Yeah, I don't remember who told me that but somebody there told me that.

Norman also testified in the deposition that in unloading concrete, he furnished two of his men to spot the truck, to see that the bucket is not too full, to rake the concrete out of the chute and to signal the operator of the dragline when to lift the bucket and move it out. Two of his employees were working with Franklin at the time of the accident.

Norman's affidavit which was filed in reply to the motion for summary judgment stated that Franklin was in sole control of the truck at the time of the accident. Such affidavit also contained these statements:

While on the way to the hospital Norman Franklin made a statement about the bad brakes on his truck.

I had no reason to believe that any claim would be made against me or Wildwood out of the accident, because it was Hardin Supply Co.'s truck and Norman Franklin, their driver, was in sole control of his truck and it was during his unloading operation that his truck rolled.

We must examine this evidence before the trial court in the light of the test provided by the Commission of Appeals in Commercial Standard Insurance Company v. Harper, 129 Tex. 249, 103 S.W.2d 143, 110 A.L.R. 529, as follows:

"It is very generally held that when the facts are not disputed, and the inferences are certain the question whether notice given was, under all the circumstances, 'timely' or 'reasonable' or 'immediate,' is one of law for the court, but if the evidence is conflicting, or the inference uncertain, it should be determined by the jury under proper instructions."

It was also stated by the Supreme Court of Texas in Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95, as follows:

While the question of whether notice was given "as soon as practicable" is ordinarily a question of fact, if, as in this case, the facts are undisputed, the question then becomes a question of law for determination by the court.

The insurance policy in this litigation being a comprehensive general liability policy, bound St. Paul to pay all sums of money Norman was obligated to pay for bodily injuries to any person. First, it is undisputed that Franklin suffered bodily injuries and that Norman was aware of this immediately after the accident occurred. By his admission, Norman was close by, discovered the accident at once, and carried Franklin to town to the doctor. Norman knew this was not a trivial accident, as he stated Franklin was bleeding at the mouth and hurting.

Another phase of this matter which must be considered by this court is from the standpoint as to whether Norman should have reasonably expected Franklin to make a claim against him. A good statement of the law, in this connection, was made in Texas Glass & Paint Co. v. Fidelity & Deposit Co. of Maryland (Tex.Com.App.) 244 S.W. 113, as follows:

It would seem to be a fair deduction from these holdings that, when the insured has

complied with its full duty to acquaint itself with all the facts surrounding an accident, and it appears from such investigation that the occurrence was of such a nature as that it could not reasonably be expected to result in any claim or liability, there is no duty to report it.

A similar statement as to this question was made in Yorkshire Indemnity Co. v. Roosth & Genecov Pro. Co (Fifth Circuit) 252 F.2d 650, as follows:

> The Assured now recognizes that when in 1948 it chose not to make the report, in order then to avoid the breach of the policy, it must show that, first, it made a full, complete and fair investigation of all of the facts and surrounding circumstances, and then, on the basis of that investigation reasonably concluded that "* * * the occurrence was of such a nature as that it could not reasonably be expected to result in any claim or liability * * *."

The facts of this case are somewhat similar to those of the present case. The injured man was an employee of an independent contractor, and was injured on the premises of the insured. Such insured made an investigation of the accident and was assured by the independent contractor that its compensation carrier would take care of the injured man. However, the insured did not contact either the injured man or the compensation carrier to find out what they intended to do. The following is also written in this case:

> With the glaring inadequacy of the investigation from failure to contact White (injured man) and the Compensation Insurer and its significance under the Dunn case, supra, all seem to have been preoccupied with the notion that the Assured need conclude only that there is no reasonable probability of a *claim* being asserted. We think that reads the Texas law too narrowly. The Texas Supreme Court, note 3, supra, as do the parties here, all view Texas Glass & Paint Co.

v. Fidelity & Deposit Co. of Maryland, supra, as the controlling precedent. Three times it speaks in terms of the likelihood of a claim *or liability*. The words "or liability" are of extreme importance as this case illustrates.

\*   \*   \*   \*   \*   \*

> If a full, adequate and fair investigation would indicate a reasonable likelihood of legal liability, the Assured who fails to report it on the mistaken, even though reasonable, belief, that the claimant will not assert a claim, must bear the consequences. \* \* \*

The case of Dunn v. Travelers Indemnity Co., 5 Cir., 123 F.2d 710, is also somewhat similar to the present case. Both the trial court and appellate court held the notice given was too late as a matter of law. An investigation of the accident was made by interviewing the eye witnesses and the injured man's employer, but not the injured person. This court said the following:

> Such insurance contracts place an insured in this position: Whether his investigation reveals that a claim is or is not likely to be made, he may place the onus of either contingency upon the insurer by giving it notice of the occurrence promptly. Appreciative of the fairness of these provisions, the Texas courts have held the contract breached unless the decision against giving notice is reasonable and prudent, and is reached after a full investigation of all the surrounding facts and circumstances. The views and opinions of third persons who were witnesses to the occurrence, though important, were not sufficient under the facts of this case to justify the failure to give notice. No effort was made to interview the injured party, or to discover upon whom he placed the blame for the accident or what he thought the facts to be. He was the only prospective claimant; with him alone rested the decision to sue or not to sue; he was an

eyewitness to the affair, and might have seen more, or from a different view, than any of the other witnesses. Surely the exercise of ordinary prudence required an investigation as to what this man intended to do or claimed with reference to the accident.

■ The statement by Norman in his affidavit that he did not believe Franklin would make a claim against him or Wildwood did not raise an issue of fact. In Kellum v. Pacific National Fire Ins. Company, Tex.Civ.App., 360 S.W.2d 538, it is written:

> Lack of knowledge of coverage and lack of knowledge that a claim could be made are not good excuses, as a matter of law, for complying with the provisions of the policy concerning notice. (Citing cases.)

We have found nothing in the evidence, as shown by the affidavit of Norman or the depositions which excused Norman from giving notice to St. Paul as required by the policy.

The only question to be determined is whether, as a matter of law, under the circumstances of this case, 117 days were not "as soon as practicable" for written notice to be given. The term "as soon as practicable" has been construed by the courts to mean "Within a reasonable period of time under the attending circumstances, to effectuate the objects and purposes of the notice clause." General Accident Fire & Life Assurance Corporation v. Butler's Ice Cream Factory, (Tex.Com.App.) 5 S.W.2d 976.

The following delays in giving notice of accident have been held as a matter of law to be too late: 32 days, Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95; 3½ months, Trinity Universal Ins. Co. v Weems (Tex.Civ.App.) 326 S.W.2d 302; 104 days, National Surety Corp. v. Diggs, Tex.Civ.App., 272 S.W.2d 604; 107 days, Allen v. Western Alliance Ins. Co., 162 Tex. 572, 349 S.W.2d 590; 140 days, Aetna Ins. Co. v. Durbin, Tex.Civ.App., 417 S.W.2d 485; 28 days, Commercial Standard Ins.

Co. v. Harper, supra; 77 days, Butler v. Employers Casualty Co., Tex.Civ.App., 241 S.W.2d 964. The Supreme Court of Texas also has held that the failure of the insured to give notice "as soon as practicable" is a valid defense under the policy, regardless of whether any loss or damage to the insurer resulted from the delay. New Amsterdam Casualty Co. Hamblen, 144 Tex. 306, 190 S.W.2d 56.

■ Under the undisputed evidence in this case, Norman did not give the required written notice as soon as practicable.

Affirmed.