**Don BLANTON, Appellant and Cross–Appellee**

v.

**VESTA LLOYDS INSURANCE COMPANY, Appellee and Cross–Appellant.**

**No. 05–04–00156–CV.**

Court of Appeals of Texas, Dallas.

March 9, 2006.

608

Randall Yazbeck, Dallas, for appellant.

E. Thomas Bishop, Alexander N. Beard, Bishop & Hummert, P.C., Dallas, for appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion by Justice MOSELEY.

This is a suit for declaratory judgment concerning insurance coverage. Don Blanton appeals the granting of Vesta Lloyds Insurance Company's second motion for summary judgment, and Vesta appeals the denial of its initial motion for summary judgment. Because Vesta conclusively established that Blanton breached the "timely notice of occurrence" provision of the policy and that Vesta was prejudiced as a result, we resolve Blanton's four issues against him and affirm the trial court's final order.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 1997, Blanton leased certain property to Justin Burgess to operate a retail store of "one-of-a-kind restored art-deco furniture and related items." On August 27, 1998, Vesta wrote a commercial general liability coverage policy for the property; the policy ran for a term of one year.

On August 17, 2000, Burgess sued Blanton, alleging that the roof and structure of the property were defective when he leased the property, and Blanton covered up the defects. Burgess alleged that, prior to entering into the lease, Blanton represented to him that the roof was in good condition and did not leak and promised to repair any leaks within forty-eight hours. Burgess alleged that, from the beginning of the lease through the filing of the petition, the roof and structure leaked "whenever it rains, snows, or sleets." Burgess alleged he notified Blanton of the leaks on more that eighty occasions and that Blanton attempted to repair the leaks, but the leaks persisted. Burgess alleged the leaks caused significant water damage to his inventory. He also alleged that he moved onto the property, and, as a result of the leaks, mold was growing, aggravating health problems.

Blanton was served with Burgess's original petition on October 24, 2000. He forwarded the original petition to Vesta on or about December 6, 2000. Vesta's receipt of the petition was its first notice of Burgess's complaints or of the lawsuit.

---

1. Vesta also sued and obtained summary judgment against TXON, Inc., which does not appeal.

Vesta filed this lawsuit seeking a declaration that it had no obligation to defend or indemnify Blanton in connection with Burgess's suit, as well as attorney's fees. Vesta moved for summary judgment on the ground that the fortuity doctrine precluded any insurance coverage. Blanton responded to the motion. The trial court denied this motion for summary judgment.[2]

Vesta then filed a second motion for summary judgment, also supported by evidence. Vesta's second motion asserted: (1) Blanton breached the timely notice provisions of the policy, specifically, notice as soon as practicable of "an 'occurrence' or an offense which may result in a claim" and notice of the claim or suit, which are conditions precedent to coverage; and (2) Vesta was prejudiced by the failure to give timely notice. Vesta also sought summary judgment on its request for attorney's fees. Blanton responded to the motion, supported by his affidavit. The trial court granted this motion. However, the trial court subsequently granted Blanton's motion to reconsider the granting of the second motion for summary judgment. After the case was transferred, the trial court reconsidered its order setting aside the summary judgment in Vesta's favor, granted summary judgment in favor of Vesta, and denied all requests for attorney's fees. Both parties timely appealed from this final order.

## II. TIMELY NOTICE OF OCCURRENCE AND PREJUDICE

In his first and second issues, Blanton contends the trial court erred in granting Vesta's second motion for summary judgment because Vesta failed to establish as a matter of law that Blanton breached the "timely notice" provisions of the policy,

including the "notice of occurrence" and "notice of claim or suit" provisions, and material fact issues remain on the issue of breach. In his third and fourth issues, Blanton contends the trial court erred in granting Vesta's second motion for summary judgment because Vesta failed to establish prejudice by untimely notice as a matter of law, and he presented evidence raising a fact issue as to prejudice. First, we consider Blanton's arguments regarding breach of the policy provision requiring notice as soon as practicable of "an 'occurrence' or an offense which may result in a claim," and Vesta's prejudice from any untimely "notice of occurrence."

### A. Standard of Review

To succeed in a motion for summary judgment under rule of civil procedure 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005). Once the movant establishes its right to summary judgment, the burden shifts to the nonmovant to present the trial court with evidence of any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant and resolve any doubt in the nonmovant's favor. *Urena*, 162 S.W.3d at 550; *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Because the trial court's order granting summary judgment does not specify the basis for the ruling, we affirm the trial court's judgment if any of the theories advanced are meritorious. *Urena*, 162 S.W.3d at 550.

---

**2.** This order is not in the record on appeal.

## B. Relevant Provisions of the Insurance Policy

The policy covered bodily injury and property damage only if the bodily injury or property damage was caused by an occurrence that took place in the coverage territory (including the premises leased to Burgess) during the policy period. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Section IV of the policy addressed CGL conditions; paragraph 2 dealt with the insured's duty of notice:

> 2. Duties in The Event Of Occurrence, Claim Or Suit.
>
> > a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> >
> > (1) How, when and where the "occurrence" took place;
> >
> > (2) The names and addresses of any injured persons and witnesses; and
> >
> > (3) The nature and location of any injury or damage arising out of the occurrence" or offense.

The "Texas Changes—Conditions Requiring Notice" endorsement modified the insurance provided under the commercial general liability coverage part and provided:

> With regard to Bodily Injury and Property Damage Liability, unless we are prejudiced by the Insured's or your failure to comply with the requirement, any provision of this Coverage Part requiring you or any insured to give notice of occurrence, claim, or suit, ... will not bar liability under this Coverage Part.

## C. Applicable Law

■■■ Compliance with the provision that notice of an occurrence or accident be given "as soon as practicable" is a condition precedent, the breach of which voids policy coverage. *Broussard v. Lumbermens Mut. Cas. Co.*, 582 S.W.2d 261, 262 (Tex.Civ.App.1979, no writ); *see Milton v. Preferred Risk Ins. Co.*, 511 S.W.2d 83, 85 (Tex.Civ.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.) ("All of the conditions precedent of an insurance policy must be strictly complied with before the insurer will be liable."). "As soon as practicable" means as soon as notice would have been given by an ordinary prudent person in the exercise of ordinary care in the same or similar circumstances. *Atteberry v. Allstate Ins. Co.*, 461 S.W.2d 219, 221 (Tex. Civ.App.-El Paso 1970, writ ref'd n.r.e.) (citing *Allstate Ins. Co. v. Darter*, 361 S.W.2d 254, 255 (Tex.Civ.App.-Fort Worth 1962, no writ)). What constitutes a reasonable time within which notice must be given depends on the individual facts and circumstances of each particular case, including but not limited to age, experience, and capacity for understanding and knowledge that coverage exists in one's favor. *Cent. Sur. & Ins. Corp. v. Anderson*, 446 S.W.2d 897, 901 (Tex.Civ.App.-Fort Worth 1969, no writ); *Nat'l Sur. Corp. v. Diggs*, 272 S.W.2d 604, 607 (Tex.Civ.App.-Fort Worth 1954, writ ref'd n.r.e.).

■ The insured's failure to notify the insurer does not absolve the insurer from the underlying judgment unless the lack of notice prejudices the insurer. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 174 (Tex.1995); *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 & n. 3 (Tex.1993). The purpose of the timely notice requirement is to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witness so that it may adequately

prepare to adjust or defend any claims that may be asserted against persons covered by its policy. *Employers Cas. Co. v. Glens Falls Ins. Co.*, 484 S.W.2d 570, 575 (Tex.1972). When an insurer must prove it was prejudiced by the insured's failure to comply with the notice provisions, "the recognized purposes of the notice requirements form the boundaries of the insurer's argument that it was prejudiced; a showing of prejudice generally requires a showing that one of the recognized purposes has been impaired." 13 COUCH ON INSURANCE § 186:14 (3d ed. 2005).

■ However, an insured's failure to give notice of an accident or occurrence is excused, that is, there is no duty to report it, when the insured has complied with his full duty to acquaint himself with all the facts surrounding an accident, and it appears from such investigation that the occurrence was of such a nature that it could not reasonably be expected to result in any claim or liability. *Tex. Glass & Paint Co. v. Fid. & Deposit Co.*, 244 S.W. 113, 115 (Tex. Comm'n App.1922, judgm't adopted); *Edwards v. Ranger Ins. Co.*, 456 S.W.2d 419, 421 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.); *Norman v. St. Paul Fire & Marine Ins. Co.*, 431 S.W.2d 391, 396 (Tex.Civ.App.-Beaumont 1968, writ dism'd); *Diggs*, 272 S.W.2d at 609; *see Darter*, 361 S.W.2d at 255 (failure to give notice within reasonable time, without excuse, is complete defense).

### D. Discussion

■ In support of its second motion for summary judgment, Vesta presented Blanton's deposition, in which he testified that Burgess first complained about the roof around the first part of 1998, six or eight months after he moved in, and complained "pretty consistently during the entire course of his tenancy about roof leaks"; and Blanton received about thirty complaints about roof leaks on the covered premises from Burgess, which was "way in excess of anything [he] receive[d] with regard to any of [his] other properties." Blanton also testified Burgess complained about "multiple leaks," not one leak, and that Blanton was unable to repair a leak in the skylight caused by hail.

Vesta also presented the affidavit of George E. Cash, its litigation specialist, who stated that Vesta was not notified of any of Burgess's complaints until December 6, 2000, when Blanton forwarded Burgess's original petition to his insurance agent. Cash also stated that Vesta was prejudiced by Blanton's failure to give timely notice of Burgess's complaints and the occurrences giving rise to Burgess's claims because its standard procedure was to record and promptly investigate complaints and occurrences potentially giving rise to claims, and if Blanton had promptly notified it of Burgess's complaints when they were initially made, "[Vesta] would have followed this procedure and investigated the matter." Specifically, Cash stated:

[Vesta] would have examined the items for which damages was claimed, examined the cause of any allege damaged, including an examination of the premises during the time of the alleged leaks, determined the exact date of any damage so as to confirm that same happened during the [Vesta] policy, attempted to adjust the claim with Burgess, and protected any subrogation rights to any property of Burgess for which it was determined a covered loss payment should be made. Blanton's delay of over 2½ years in notifying [Vesta] of Burgess'[s] complaints prevented [Vesta] from protecting itself from potential further loss or claims against its coverage, including urging the insured to correct premises defects that increased the risk

of losses or claims. The delay of Blanton in reporting these claims has hindered, and in fact in part made impossible, adequate investigation of the claims made by Burgess. Burgess has testified that certain damaged items were disposed of at a loss.... Further claims concerning Burgess['s] health have been made that could have been addressed before resulting in litigation. .... In addition, [Vesta] has been required to spend thousands of dollars defending litigation which could have been prevented with timely notice. [Vesta] has been prejudiced by all of the above.

We conclude Vesta presented evidence that Blanton failed, without excuse, to notify Vesta of Burgess's complaints about roof leaks until over two and one-half years after he first made them and that Vesta was prejudiced by this untimely notice, thus establishing as a matter of law that Blanton failed to timely notify it of "an 'occurrence' or an offense which may result in a claim" and prejudice. *See Employers Cas. Co.*, 484 S.W.2d at 575 (noting prejudice from inability to investigate claims); *Diggs*, 272 S.W.2d at 607 (holding 104 days between accident and notice not reasonable). Thus, the burden shifted to Blanton to present evidence raising a fact issue on timely notice and lack of prejudice, thus avoiding summary judgment.

■ In doing so, we reject Blanton's argument that whether Burgess's complaints about roof leaks constituted "an 'occurrence' ... which may result in a claim" is determined from his subjective perspective as the insured, pursuant to *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185 (Tex.2002).[3] In *King*, the insured was sued for negligent hiring,

training, and supervision, and the court considered whether the insured's negligent hiring, training, and supervision constituted an occurrence under the terms of the policy, although the injury was directly caused by the employee's intentional conduct. *Id.* at 187. Blanton relies on the following statement by the court:

> The policy's express language, our case law, and the history behind the Commercial General Liability Policy all support the conclusion that the insured's standpoint controls in determining whether there has been an "occurrence" that triggers the duty to defend.

*Id.* at 188.

Relying on his affidavit supporting his response to Vesta's second motion for summary judgment, Blanton argues in the trial court and on appeal that this evidence showed that Burgess's complaints about roof leaks were not "an 'occurrence' ... which may result in a claim" triggering a duty to notify Vesta because Blanton did not view Burgess's complaints as an "occurrence." In his affidavit, Blanton stated:

> I have owned and leased to others real property in ... Dallas for more than 20 years. During that period of time, it has not been unusual, and, it is in fact common, for the buildings I own and lease, which are typically older buildings, to experience roof leaks, and for me to receive notices and complaints from my tenants about roof leaks.
>
> For me to report every notice or a roof leak I receive to my insurance company would be unreasonable and unnecessary. The fact that a tenant complains of a roof leak is not such a

**3.** Blanton made this argument in his motion to reconsider the trial court's initial granting of Vesta's second motion for summary judgment. Blanton argued that the supreme court's opinion in *King*, which was decided after the court rendered summary judgment in Vesta's favor, "dictate[d] a different result" on the notice of occurrence issue.

complaint that I or any reasonable person would anticipate would result in a lawsuit for damages, particularly personal injury damages. In fact of the hundreds of times I have received word that there is a leak in one of my roofs, only Justin Burgess has filed a lawsuit for damages against me—and that was done after he stopped paying rent and I filed suit to evict him from the building.

Here, the duty at issue is not the insurer's duty to defend, as it was in *King*, but the insured's duty to notify, a condition precedent to coverage under the policy. *See Broussard*, 582 S.W.2d at 262; *Milton*, 511 S.W.2d at 85. Rather than a subjective perspective, the duty to notify is determined by objective standards:

> [W]hen the insured has complied with its full duty to acquaint itself with all the facts surrounding an accident, and it appears from such investigation that the occurrence was of such a nature as that it could not reasonably be expected to result in any claim of liability, there is no duty to report it.

> On the other hand, it is equally clear that determination of the question whether an occurrence comes within the terms of the policy as being an accident required to be reported should not be left solely to the judgment or discretion of the assured. Consequently ... the insured is not relieved from its duty to report [an] accident merely because its attorney made a full investigation and reached the conclusion that it was too trivial to report. In such case the assured acts at its peril.

*Houck v. State Farm Mut. Auto. Ins. Co.*, 394 S.W.2d 222, 226 (Tex.Civ.App.-Beaumont 1965, writ ref'd n.r.e.) (citations omitted); *see* 13 COUCH ON INSURANCE § 191:9 (3d ed. 2005) ("[A]ll the relevant facts known to the insured on the date in question must be evaluated under a standard of objective reasonableness that asks when circumstances known to the insured would have suggested to reasonable person the possibility of claim.") (citations omitted).

Even construing the language whether notice was given "as soon as practicable" in favor of the insured, this language is "equivalent to 'within a reasonable time' " and "invoke[s] the standard of reasonable prudence." *State Farm County Mut. Ins. Co. of Tex. v. Plunk*, 491 S.W.2d 728, 731 (Tex.Civ.App.-Dallas 1973, no writ). In *Carroll v. Employers Casualty Co.*, 475 S.W.2d 390, 393 (Tex.Civ.App.-Beaumont 1971, writ ref'd n.r.e.), the Beaumont court of appeals rejected the insured's excuse that "in good faith he determined, [i]n his own mind, from what he term[ed] was an adequate investigation, that there was no likelihood of a claim being made against him because of [the complainant's] injuries." Accordingly, Blanton's reliance on *King* to argue that his duty to notify of "an 'occurrence' ... which may result in a claim" is determined from his subjective perspective is misplaced.

■ Moreover, lack of knowledge that a claim could be made is, as a matter of law, not an excuse for failing to comply with the notice provisions of an insurance policy. *See Norman*, 431 S.W.2d at 396; *Standard Accident Ins. Co. v. Employers Cas. Co.*, 419 S.W.2d 429, 432 (Tex.Civ. App.-Dallas 1967, writ ref'd n.r.e.); *Kellum v. Pac. Nat'l Fire Ins. Co.*, 360 S.W.2d 538, 542 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.). Blanton's evidence does not establish excuse, that is, it does not show that he made a full, complete, and fair investigation of all the facts and surrounding circumstances of Burgess's "excessive" complaints and then, on the basis of that investigation, reasonably concluded that the occurrence was of such a nature as that it could not reasonably be expected to result in any claim or liability. *See Tex.*

*Glass & Paint Co.*, 244 S.W. at 115; *Edwards*, 456 S.W.2d at 421; *Norman*, 431 S.W.2d at 396; *Diggs*, 272 S.W.2d at 609. Because Blanton failed to present evidence raising a fact issue as to his breach of the "timely notice of an occurrence" provision, we resolve his first and second issues against him as to this provision.

 As to prejudice, Blanton argues Vesta was not prejudiced because, according to Blanton's affidavit, Vesta was not prevented from conducting discovery in defending Blanton in Burgess's suit, and no judgment was taken before Vesta assumed defense of Blanton. However, prejudice from failure to notify timely arises from inability to investigate the circumstances of an occurrence to prepare adequately to adjust or defend any claims, not merely to prepare for trial. *See Employers Cas. Co.*, 484 S.W.2d at 575.

Blanton also argues that Cash's affidavit concerning prejudice resulting from lack of notice is self-serving, conclusory, and speculative. We reject this argument because Cash stated underlying facts supporting his conclusion as to prejudice. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (holding affidavits stating legal conclusions, not facts, incompetent summary judgment proof).

Because Blanton's evidence fails to address the inability to conduct a timely investigation, we conclude he has failed to raise a fact issue as to prejudice from untimely "notice of occurrence." We resolve his third and fourth issues against him to this extent.

### III. CONCLUSION

Having resolved Blanton's four issues against him on the issues of breach of the "notice of occurrence" provision and prejudice from the untimely "notice of occurrence," we conclude the trial court properly granted Vesta's second motion for summary judgment in its favor on this ground. Accordingly, we need not consider Blanton's arguments as to breach of the "notice of claim or suit" provision and prejudice from untimely "notice of claim or suit." *See Urena*, 162 S.W.3d at 550. In addition, we need not address Vesta's cross-appeal. *See* TEX.R.APP. P. 47.1. Accordingly, we affirm the trial court's final order.