# NO. 12-23-00285-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KENNETH R. CADE,*<br>*APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *STATE FARM LLOYDS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Kenneth R. Cade appeals the trial court's order granting summary judgment against him and in favor of State Farm Lloyds. He asserts nine issues on appeal. We affirm.

### BACKGROUND

On April 18, 2019, a windstorm blew a large tree onto a portion of the house at 315 Noonday Drive in Chandler, Texas. The house was owned by Kenneth and Barbara Cade[1] and insured, along with its contents, by State Farm. Following notification of the claim, State Farm initiated several inspections of the property. State Farm's inspectors determined that the fallen tree caused only a portion of the damage to the house. State Farm issued payment for the repairs it deemed caused by the tree and windstorm totaling approximately $30,000. Approximately eighteen months after the windstorm, Cade mentioned his personal property for the first time. He claimed that several items of personal property inside the house were damaged or destroyed.

---

[1] Barbara Cade passed away in December 2020.

Cade also urged that the house was a total loss and that State Farm failed to adequately compensate him for it.

The Cades filed suit against State Farm on October 22, 2020, five days after selling the house, asserting claims for breach of contract and violations of the Texas Insurance Code and Deceptive Trade Practices Act. State Farm later filed two traditional motions for summary judgment, one for the personal property claim and one for the real property claim. In the motions, State Farm alleged that (1) any further damage to the house was not caused by the windstorm, (2) the house contained no personal property of value, and (3) the Cades failed to comply with certain conditions precedent in the policy. In response, Cade argued that State Farm failed to prove it was prejudiced by any failure to comply with conditions precedent. Following a hearing, the trial court granted both motions without specifying the grounds for its ruling. This appeal followed.

SUMMARY JUDGMENT

In all nine issues, Cade contends the trial court erred in granting summary judgment in favor of State Farm.

**Standard of Review and Applicable Law**

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 467–68 (Tex. App.—Dallas 2009, pet. denied). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take as true evidence favorable to the nonmovant; and (3) the court must indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984); *Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 221–22 (Tex. App.—Dallas 2008, pet. struck). We are not required to ascertain the credibility of affiants or to determine the weight of

2

evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See* ***Gulbenkian v. Penn***, 252 S.W.2d 929, 932 (Tex. 1952); ***Palestine Herald-Press Co. v. Zimmer***, 257 S.W.3d 504, 508 (Tex. App.—Tyler 2008, pet. denied).

Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order granting summary judgment does not specify the grounds relied on for its ruling, we will affirm it if any of the theories advanced are meritorious. ***State Farm Fire & Cas. Co. v. S.S.***, 858 S.W.2d 374, 380 (Tex. 1993).

When a party moves for summary judgment on multiple grounds and the trial court's summary judgment order does not specify the ground or grounds upon which it was based, the appealing party must negate all possible grounds upon which the order could have been based. *See* ***Star–Telegram, Inc. v. Doe***, 915 S.W.2d 471, 473 (Tex. 1995); ***Jarvis v. Rocanville Corp.***, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). This can be accomplished by asserting a separate issue challenging each possible ground. ***Jarvis***, 298 S.W.3d at 313. Alternatively, a party can raise an issue which broadly asserts that the trial court erred by granting summary judgment and within that issue provide argument negating all possible grounds upon which summary judgment could have been granted. *See* ***Star–Telegram***, 915 S.W.2d at 473; ***Jarvis***, 298 S.W.3d at 313. This is sometimes referred to as a ***Malooly*** issue.[2] *See e.g.,* ***Rangel v. Progressive Cty. Mutual Insurance Company***, 333 S.W.3d 265, 269–70 (Tex. App.—El Paso 2010, pet. denied). It is not sufficient to merely raise a general issue as the appellant must also support the issue with argument and authorities challenging each ground. ***Id.*** at 270 (citing ***Cruikshank v. Consumer Direct Mortgage, Inc.***, 138 S.W.3d 497, 502–03 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (a general ***Malooly*** issue statement only preserves a complaint if the ground challenged on appeal is supported by argument)). If the appellant fails to challenge each ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. ***Star–Telegram, Inc.***, 915 S.W.2d at 473; ***Jarvis***, 298 S.W.3d at 313.

To prove a breach of contract claim, the following elements must be satisfied: 1) a valid contract, 2) the plaintiff performed or tendered performance, 3) the defendant breached the

---

[2] ***Malooly Bros., Inc. v. Napier***, 461 S.W.2d 119, 121 (Tex. 1970).

contract, and 4) the plaintiff was damaged by the breach. ***Critchfield v. Smith***, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied).

## House/Dwelling Claim

In his first and seventh issues, Cade asserts the trial court erred in granting State Farm's summary judgment motion on the house/dwelling claim. Specifically, in his seventh issue, he claims the summary judgment motion did not conclusively negate an essential element of Cade's breach of contract claim.[3]

In its motion for summary judgment, State Farm argued that Cade failed to comply with a specific policy condition requiring a sworn proof of loss. It also contended that the evidence established that any further damages to the house were not caused by the tree and windstorm and instead resulted from a lack of maintenance. Therefore, according to State Farm, it paid for what was covered under the policy and did not breach the contract. State Farm attached reports and affidavits from its adjusters, inspectors, and experts to its motion for summary judgment. It also included Cade's deposition testimony. Cade attached no additional evidence to his response.

State Farm adjuster Stephen Stinnett conducted an initial inspection on May 20 and 22, 2019. Barbara was present the first day, while Kenneth was not present either day. Stinnett went inside the home on May 20 to investigate damage to the interior potentially caused by the windstorm. Based on his observations, Stinnett concluded that the house had been abandoned for many years. Specifically, Stinnett observed the following:

> The pier and beam foundation of the house was rotted. The walls and framing of the house were rotted. Ceilings in many rooms of the house were collapsing and same was not due to the 04/18/2019 windstorm. There was a great deal of nasty debris scattered throughout the entire house. The house was filled with stray cats and I noticed an old, overflowing litter box. They appeared to be feral cats. The house was in bad shape and had been neglected for quite some time. I did not see or observe any personal property, including any furniture, of any significant monetary value inside the house. Everything inside the house was simply in very bad shape and little more than junk. The house was in a deplorable condition, inside and out.

Stinnett also took photographs of the inside and outside of the home. Notwithstanding the dilapidated nature of the house, Stinnett found covered damage and State Farm issued a check for $22,529.49 based on his findings. Cade returned this check to State Farm.

---

[3] The argument on these two issues is lacking; however, we generously construe Cade's brief as attacking all possible grounds for summary judgment.

Brandon Foard, another State Farm adjuster, inspected the house on April 3, 2020. Neither Kenneth nor Barbara was present; however, Robbie Reece with Reece Roofing and Remodeling attended. Foard conducted an inspection of the house's exterior and noted damage to the front, left, and right elevations. Foard also made the following notes:

> I also noted the rear elevation and addition on the north/left side of the house were not damaged by the 4/18/2019 windstorm. Significantly, I further noted that the house had a lot of pre-existing damage caused by rot, wear, tear, deterioration, lack of maintenance, long-term settlement, and much neglect. I observed feral cats going in and out of broken windows and crawlspace areas. It was obvious to me that no one had lived in the house for a long time and that the house had been in a deplorable condition for many years.

Foard discussed Reece's repair estimate with Reece at the inspection. Reece's estimate was for a lump sum of $127,500. According to Foard, Reece was unable to break down the estimate into line items. Therefore, Foard could not reconcile Reece's repair estimate. However, based on Foard's inspection, State Farm issued a supplemental payment of $7,614.79 and a statutory interest payment of $646.74. Cade returned this check as well.

Brian Sattler, an engineer with EFI Global, Inc., inspected the interior and exterior of the home on March 28, 2021, and prepared a report. While Sattler did observe damage caused by the windstorm and tree, he also observed the following damage unrelated to the windstorm:

> Structural damage to the wall framing due to the tree impact was limited to the framing around the front door. There was no evidence observed to suggest racking of the structure due to tree impact, as was alleged by the insured's engineer.
>
> Water damage to the drywall was observed in front room and kitchen area, consistent with being causally related to the tree impact. Additional water damage was observed in the north room and bedroom closet, away from the location of tree impact. No evidence of tree impact damage was observed to the composition shingle roof covering over these portions of the residence, indicating water intrusion in these areas was unrelated to the tree impact.
>
> The front roof slope was covered with multiple layers of tarps and was not able to be directly examined during EFI's site visit. It is assumed that the damage to the front roof slope is consistent with tree impact, as reported. Expected repairs to this portion of the roof would include replacing damaged rafters and braces, replacing the sheathing, and replacing the shingles. There was no evidence of damage to the shingles on the remaining portion of the roof, and replacement of the shingles can be limited to the front slope and the east-to-west ridge cap shingles.
>
> While structural repairs necessary as a result of the reported tree impact are limited to the front wall of the residence and the front roof slope, years or possibly decades of neglect and deferred maintenance have resulted in severe rot and deterioration throughout the property. The wood siding and wall framing was rotted/deteriorated completely through in numerous locations, especially at the east perimeter of the residence, away from the tree impact location. As a result, it may be difficult to find a reputable contractor willing to perform repairs while keeping a scope limited to the observable tree impact damage.

5

Severe damage to the interior of the residence and the contents was observed due to an apparent/posssible case of animal hoarding. Nearly every surface within the residence was covered with animal feces and urine. Additionally, the apparent remains of several dead cats and rodents were found in the residence. It was also observed that apparent vultures were accessing the interior of the residence through a hole in the siding at the east perimeter of the structure, unrelated to the tree impact.

As a result, Sattler concluded that the structural repairs necessary due to the tree impact were limited to the front of the house and did not include the entire house.

Gary Boyd, a roofer with Boyd, Inc., inspected the house on the same day as Sattler. In his report, Boyd opines that "[t]he dwelling has not been habitable by human beings for a long time. The dwelling was beyond saving or repairing well before the tree fell on it." He also determined that the "dwelling is unrepairable due to age, wear and tear, deferred maintenance, dry rot and long term animal infestation."

In his deposition, Cade maintained that his wife lived at the home. However, he had not lived there since 2008, when he moved to his mother's house after she died. Cade testified that Barbara lived at both the house at 315 Noonday Drive and an adjacent house at 305 Noonday Drive. He claimed that she was "trying to take care of both" homes, so she alternated staying between the two homes. There had been no water service to the home for at least seven years, and Cade admitted to having no personal knowledge as to the home's pre-storm condition.

State Farm also attached a copy of the insurance policy as summary judgment evidence. The policy detailed that it did not cover damages for deterioration, neglect, inadequate maintenance, or vermin, rodents, or domestic animals. The summary judgment evidence did not include either an affidavit or estimate from Reece or an expert report on Cade's behalf.

Based on the evidence before the trial court, State Farm conclusively established that it paid $30,791.02 to repair the house for covered losses resulting from the windstorm. The evidence also showed that any further damages to the house were not caused by the windstorm but from neglect and lack of maintenance, which the policy did not cover. Cade presented no evidence to support his contention that the house was a total loss because of the windstorm. Therefore, we conclude the trial court properly granted summary judgment on the house/dwelling claim. Cade's first and seventh issues are overruled.

**Personal Property Claim**

In his fourth issue, Cade contends that State Farm failed to prove prejudice by his failure to comply with certain policy conditions. In its answer and motion for summary judgment,

State Farm alleged that it was excused from covering any personal property damage because Cade failed to comply with mandatory terms and conditions under the policy. Specifically, State Farm urged that Cade failed to: (1) give immediate notice to State Farm; (2) protect the property from further damage or loss; (3) prepare an inventory of damaged personal property showing in detail the quantity, description, age, replacement cost, and amount of loss substantiated by bills, receipts, and related documents; (4) comply with requests for exhibitions of the damaged property, records, documents, and statements; and (5) submit a signed, sworn proof of loss within 91 days of the loss.

It is undisputed that Cade did not comply with the conditions regarding his personal property claim. He did not notify State Farm of his personal property claim until September 2020, one month before filing suit. In addition, while he testified regarding some of the house's contents, he did not testify in detail regarding all of the items, and he could not support any of his claimed values. Furthermore, by his own admission, Cade did not remove any of the home's contents until "much, much later."

The parties dispute whether State Farm must show it was prejudiced by Cade's failure to comply with these provisions. In *PAJ, Inc. v. Hanover Ins. Co.*, the Texas Supreme Court held that an "insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." 243 S.W.3d 630, 636-37 (Tex. 2008). This notice-prejudice rule prevents an insurer from denying coverage based on untimely notice. *Id.* at 636. However, the effects of *PAJ* on other insurance policy provisions is less clear. Federal cases have determined that an insured's failure to provide a sworn proof of loss is subject to the notice-prejudice rule. *See Cunningham v. Allstate Vehicle & Prop. Ins. Co.*, Civil Action No. 4:18-CV-4, 2018 WL 2020723, at *2-3 (E.D. Tex. May 1, 2018) (discussing federal district court interpretation and application of notice-prejudice rule in proof of loss cases); *but see GuideOne Mut. Ins. Co. v. First Baptist Church of Brownfield*, 495 F. Supp. 3d 428, 437-38 (N.D. Tex. 2020) (declining to extend notice-prejudice rule to appraisal context). At least one Texas appellate court has held that a proof of loss provision is a condition precedent to coverage and does not require a showing of prejudice. *City of Spearman v. Tex. Mun. League Intergovernmental Risk Pool*, 601 S.W.3d 72, 75 (Tex. App.—Amarillo 2020, pet. denied). The Texas Supreme Court has not explicitly extended the notice-prejudice rule to the proof of loss provision.

However, in this case, assuming without deciding that State Farm must show prejudice by Cade's failure to comply with the policy conditions, we conclude that State Farm has in fact demonstrated prejudice. Prejudice is shown when the purpose of a particular provision has been impaired. *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 615 (Tex. App.—Dallas 2006, no pet.). The purpose of the provisions at issue is to allow the insurer "to properly investigate the circumstances of the loss while the occurrence is fresh in the minds of witnesses, to prevent fraud, and to enable it to form an intelligent estimate of its rights and liabilities so that it may adequately prepare to defend any claim that may arise." *Hanover Ins. Co. of N.Y. v. Hagler*, 532 S.W.2d 136, 138 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). However, "an insurer must offer 'more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim.'" *Hamilton Props. v. Am. Ins. Co.*, Civil Action No. 3:12-CV-5046-B, 2014 WL 3055801, at *9 (N.D. Tex. July 7, 2014) (quoting *Trumble Steel Erectors, Inc. v. Moss*, 304 Fed. Appx. 236, 244 (5th Cir. 2008) (per curiam)).

The summary judgment evidence established that Cade did not claim personal property damages until September 2020, when his attorney emailed State Farm adjuster Kelly Clark a typed letter from Cade referring to "treasured antiques" in the home. The adjuster replied, asking for a detailed inventory and other documentation. She also asked for the ages and values of the items Cade claimed were damaged as well as photographs of the damaged property. Clark did not receive a response. Cade sold the house and filed suit the next month.

In addition, State Farm had no opportunity to investigate Cade's personal property claim. While Stinnett went inside the home during his inspection and observed that the home did not contain any personal property of value, he was not investigating the personal property. He, and the other inspectors, investigated damage to the house itself. In short, State Farm was completely unable to investigate Cade's personal property claim. In addition, Cade admitted leaving the damaged items in the house for years after the loss, making no effort to remove them from the elements or protect them from further damage.

Based on the foregoing, we conclude that State Farm established prejudice by Cade's failure to comply with the policy conditions regarding the personal property claim. Therefore, the trial court did not err in granting summary judgment on that claim. We overrule Cade's fourth issue.

## DISPOSITION

Having overruled Cade's first, fourth, and seventh issues, we ***affirm*** the trial court's judgment.[4]

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 30, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Griffith, Retired J., Twelfth Court of Appeals, sitting by assignment.*

---

[4] Because our resolution of these issues is dispositive of Cade's appeal, we need not address his remaining issues. *See* TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 30, 2024**

**NO. 12-23-00285-CV**

**KENNETH R. CADE,**
Appellant
V.
**STATE FARM LLOYDS,**
Appellee

Appeal from the 173rd District Court
of Henderson County, Texas (Tr.Ct.No. CV20-0598-392)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, Kenneth R. Cade, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Griffith, Retired J., Twelfth Court of Appeals, sitting by assignment.*